UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

    v.                                       Case No. 23-CR-68

HURIA H. ABU,

                Defendant.

## PLEA AGREEMENT

1.      The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Abbey M. Marzick and William T. Berens, Assistant United States Attorneys, and the defendant, Huria H. Abu, individually and by attorney Robert LeBell, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.      The defendant has been charged in Counts One, Two, Three, Four, Five, Six, Seven, and Eight of a nine-count superseding indictment, which alleges violations of Title 18, United States Code, Sections 371, 1951(a), 924(c)(1)(A)(ii), 1708, and 2(a).

3.      The defendant has read and fully understands the charges contained in the superseding indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.      The defendant voluntarily agrees to plead guilty to the following counts set forth in full as follows:

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      At all times material to this Indictment, AV-1 was delivering mail in his capacity as a mail carrier employed by the United States Postal Service.

2.      On or about October 25, 2022, in the State and Eastern District of Wisconsin,

**HURIA H. ABU,**
**JESSIE L. COOK, and**
**ABDI A. ABDI**

did unlawfully obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by robbery in that the defendants did unlawfully take and obtain property, namely: a U.S. mail arrow key, against AV-1's will by means of actual and threatened force, violence, and fear of injury.

All in violation of Title 18, United States Code, Sections 1951(a) and 2(a).

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 25, 2022, in the State and Eastern District of Wisconsin,

**HURIA H. ABU,**
**JESSIE L. COOK, and**
**ABDI A. ABDI**

knowingly used, carried, and brandished a firearm during and in relation to a crime of violence, namely robbery, as charged in Count Two of this Indictment.

In violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2(a).

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

2

1.     At all times material to this Indictment, AV-2 was delivering mail in his capacity as a mail carrier employed by the United States Postal Service.

2.     On or about December 7, 2022, in the State and Eastern District of Wisconsin,

**HURIA H. ABU,**
**JESSIE L. COOK, and**
**HUSSEIN A. HAJI**

did unlawfully obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by robbery in that the defendants did unlawfully take and obtain property, namely: a U.S. mail arrow key, against AV-2's will by means of actual and threatened force, violence, and fear of injury.

All in violation of Title 18, United States Code, Sections 1951(a) and 2(a).

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     At all times material to this Indictment, AV-3 was delivering mail in his capacity as a mail carrier employed by the United States Postal Service.

2.     On or about February 10, 2023, in the State and Eastern District of Wisconsin,

**HURIA H. ABU**

did unlawfully obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by robbery in that the defendants did unlawfully take and obtain property, namely: a U.S. mail arrow key, against AV-3's will by means of actual and threatened force, violence, and fear of injury.

All in violation of Title 18, United States Code, Sections 1951(a) and 2(a).

## COUNT SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

3

1.     At all times material to this Indictment, AV-4 was delivering mail in his capacity as a mail carrier employed by the United States Postal Service.

2.     On or about March 13, 2023, in the State and Eastern District of Wisconsin,

**HURIA H. ABU,**
**DARRION M. ALLISON, and**
**ABDI A. ABDI**

did unlawfully obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by robbery in that the defendants did unlawfully take and obtain property, namely: a U.S. mail arrow key, against AV-4's will by means of actual and threatened force, violence, and fear of injury.

All in violation of Title 18, United States Code, Sections 1951(a) and 2(a).

5.     The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that those facts are true and correct and establish his guilt beyond a reasonable doubt. The information described in Attachment A is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, these offenses.

## PENALTIES

6.     The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carry the following maximum terms of imprisonment and fines: Counts Two, Four, Six and Seven, up to 20 years' imprisonment, a $250,000 fine, 3 years' supervised release, and a mandatory $100 special assessment for each count; and Count Three, a mandatory minimum of 7 years' to life imprisonment, which must run consecutive to any other sentence, a

4

$250,000 fine, up to 5 years' supervised release, and a mandatory $100 special assessment. The parties further recognize that a restitution order may be entered by the court.

7.    The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNTS

8.    The government agrees to move to dismiss the remaining counts of the superseding indictment, as they pertain to this defendant, at the time of sentencing.

## ELEMENTS

9.    The parties understand and agree that in order to sustain the charge of Hobbs Act Robbery as set forth in Counts Two, Four, Six and Seven, the government must prove each of the following propositions beyond a reasonable doubt:

a.    The defendant or his accomplice knowingly obtained property from or in the presence of a person;

b.    The defendant or his accomplice did so by means of robbery;

c.    The defendant or his accomplice believed that the person parted with the property because of the robbery; and

d.    The robbery affected interstate commerce.

10.    The parties understand and agree that in order to sustain the charge of Brandishing a Firearm During and in Relation to a Crime of Violence, as set forth in Count Three, the government must prove each of the following propositions beyond a reasonable doubt:

a.    The defendant committed the crime charged in Count Four of the superseding indictment; and

b.    The defendant or his accomplice knowingly used, carried, and brandished a firearm during that crime.

## SENTENCING PROVISIONS

5

11.     The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12.     The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13.     The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offenses set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14.     The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

15.     The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided

6

false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

**Relevant Conduct**

16.     The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

**Base Offense Level**

17.     The parties agree that the applicable base offense level for the offenses charged in Counts Two, Four, Six, and Seven is 20 under Sentencing Guidelines Manual § 2B3.1(a).

**Specific Offense Characteristics**

18.     The parties agree that a two-level increase for taking the property of a post office under Sentencing Guidelines Manual § 2B3.1(b)(1) is applicable to the offense level for the offenses charged in Counts Two, Four, Six, and Seven.

19.     The parties understand and acknowledge that the government will recommend that a six-level increase for the otherwise use of a firearm under Sentencing Guidelines Manual § 2B3.1(b)(2)(A) is applicable to the offense level for the offense charged in Counts Four, Six, and Seven. The defendant is free to argue that this increase does not apply.

**Role in the Offense**

20.     The parties understand and acknowledge that the government will recommend the 4-level enhancement under Sentencing Guidelines Manual § 3B1.1(a) applies because the defendant was an organizer and leader of a group that involved five or more participants. The defendant will not join in this recommendation, but the defendant agrees to recommend that a 2-

7

level enhancement applies under Sentencing Guidelines Manual § 3B1.1(c) because he was a manager or supervisor.

### Multiple Counts

21.     Pursuant to Sentencing Guidelines Manual § 3D1.4, four levels are added for multiple counts.

### Acceptance of Responsibility

22.     The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

23.     Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

24.     Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

8

25.     The parties agree that the government will recommend a sentence no higher than fifteen years imprisonment. The defendant agrees to recommend no lower than ten years total, including the seven-year mandatory minimum imprisonment penalty on Count Three, which must run consecutive to any other sentence.

## Court's Determinations at Sentencing

26.     The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

27.     The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

28.     The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in

9

the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

29.     The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form. [The defendant further agrees, upon request of FLP whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

## Special Assessment

30.     The defendant agrees to pay the special assessment in the amount of $300 prior to or at the time of sentencing.

## Restitution

31.     The defendant agrees to pay restitution, as ordered by the court at or before the time of sentencing.  The defendant understands that because restitution for the offenses is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S WAIVER OF RIGHTS

32.     In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

33. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the

11

defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

34. The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

35. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

36. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his conviction or sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation

12

of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

## Further Civil or Administrative Action

37.     The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

38.     The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

39.     The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

40.     The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

41.     The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

13

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

42.     The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

43.     The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

14

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: _11/4/24_
_12/19/24_

_Huria Hassan Abu_
HURIA H. ABU
Defendant

_Huria Hassan Abu_

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: _11/4/24_
_12/19/24_

ROBERT LEBELL
Attorney for Defendant

For the United States of America:

Date: _12/19/2024_

GREGORY J. HAANSTAD
United States Attorney

Date: _12/19/24_

ABBEY M. MARZICK
WILLIAM T. BERENS
Assistant United States Attorneys

15

## ATTACHMENT A

### Background

The United States Postal Service ("USPS") confirmed that between late October 2022 and mid-April 2023, there were approximately 50 thefts of mail collection boxes in the Milwaukee area, all but one of which were done using stolen arrow keys. The majority of these mail thefts were in the Shorewood and northeast area of Milwaukee. During the same time period, there were multiple reports of USPS mail carriers being robbed of their arrow keys, frequently at gunpoint.

### October 25, 2022 Armed Robbery of Postal Carrier (Counts Two and Three)

On October 25, 2022, at about 2:30pm, a USPS mail carrier (hereinafter referred to as AV-1) was delivering mail in the vicinity of 25XX North Richards Street in Milwaukee when four males approached him and demanded his property. AV-1 did not see a gun, but recalled one of the subjects saying that one of the subjects had a gun. AV-1 also recalled feeling an object being put to his back. AV-1 initially refused to give up his work keys, and one of the subjects punched him. That subject and AV-1 struggled, and during that struggle, the subject stole AV-1's keys. The four subjects fled together on foot. The subject who punched AV-1 was later identified in a photo array as co-defendant Jessie Cook.   The robbery discussed herein affected interstate and foreign commerce.

As discussed in further detail below, a cooperating defendant ("CD-1") provided a proffer-protected debrief and indicated that **Huria Abu** (hereinafter "Abu") was one of the men involved in this robbery and **Abu** brandished the firearm and pointed it into AV-1's back.

### December 7, 2022 armed robbery (Count Four)

On December 7, 2022, at about 3:00pm, USPS mail carrier, hereinafter referred to as "AV-2", was delivering mail in the vicinity of XXXX North Richards Street in Milwaukee, Wisconsin, when two masked males with handguns approached him. One of the subjects pointed his gun at AV-2 and demanded his property. AV-2 handed over his keys and the subjects fled together on foot. AV-2 heard tires squealing a few seconds later. Surveillance video showed the subjects left in a white Nissan Murano. There were two citizen witnesses who observed and ring surveillance video of the incident. The two gunmen were later identified as co-defendant Hussein Haji and co-defendant Jessie Cook.   The robbery discussed herein affected interstate and foreign commerce.

### February 10, 2023 robbery (Count Six)

On February 10, 2023, at about 11:40am, USPS carrier AV-3 was delivering mail in the vicinity of 5273 N. 27th Street in Milwaukee when three males with firearms with extended magazines

approached him and demanded and obtained his USPS Arrow Key. One of the subjects knocked off AV-3's hat with his gun, and also pointed his gun at AV-3. The suspects were seen leaving the scene in a white 2010 Nissan Altima. The car listed to co-defendant Abdi Baba, a known associate of several of the subjects. This same car was also observed outside of the Buffum search warrant address on January 11, 2023, and February 21, 2023. On February 13, 2023, while doing surveillance, MAVCTF members observed **Huria Abu** exiting the same with 2010 Nissan Altima.

### March 13, 2023 Armed Robbery of Postal Carrier (Count Seven)

On March 13, 2023, at about 1:00pm, USPS carrier AV-4 was delivering mail in the vicinity of 4548 N. 38th Street in Milwaukee when two males with guns and wearing masks ran up to him and demanded and obtained his USPS arrow key. AV-4 said that he noticed that the two males seemed to be surveilling him for a few minutes before robbing him. AV-4 described one of the subjects as very short and the other as much taller. The shorter one had a Draco-style gun with a wooden stock, pointed the gun at AV-4's head, and said, "Gimme the keys, I'll shoot you." The subjects were later identified as defendant Abdi Abdi (shorter subject) and co-defendant Darrion Allison (taller subject) (hereinafter "Allison"). Surveillance video showed the subjects fleeing in a silver 2009 Honda Civic bearing WI registration plates ABG8200. One citizen witness observed the robbery from outside her window. She saw one of the two subjects pointing a gun at the mailman. She grabbed her three-year-old nephew and pulled him to the ground, in fear that shots would be fired. The Honda Civic was registered to defendant **Abu's** stepfather, M.O. **Abu** is also linked to the Honda Civic and officers with the Whitefish Bay Police Department stopped the Honda Civic approximately four months earlier, and **Abu** was the driver.

An analysis of **Abu's** and Allison's historical cell site data placed their phones at the scene of the March 13 robbery. Abdi's phone data was limited due to it being Verizon and having no RTT. However, what we can see from Abdi's records is travel consistent with being with Abu and Allison *before and after* the robbery. There are no records for **Abdi** *at the time* of the robbery. More specifically, Abdi and Allison's phones are together before the robbery and then meet up with **Abu** shortly before the robbery, which is consistent with Allison's statement to police.

### Post-March 13, 2023 Investigation

On March 14, 2023, Abdi was observed purchasing a handgun at the Farm and Fleet store in Germantown. Abdi was observed wearing the same blue puffy jacket the shorter subject was wearing less than 24 hours earlier during the robbery the day prior.

On March 20, 2023, two black male subjects stole mail from the collection box at a post office at 3921 North 35th Street in Milwaukee. The subjects used an arrow key. One of the subjects was wearing the same blue puffy jacket as the shorter subject from the March 13 robbery. Pursuant to state search warrant, a GPS tracking device was attached to the Honda Civic used in the March

13 robbery. On March 24, 2023, MPD officers conducted a traffic stop of the same Honda Civic. Located inside the vehicle was the driver/owner Abdi, and passengers **Abu** and Allison. During the traffic stop, officers obtained phone numbers for the occupants.

### Butler events on March 27, 2023

On March 27, 2023, around midnight, Butler Police Department officers observed two male subjects running down a deserted alley. Officers stopped and questioned the men and they were identified as Abdi and Allison. After being questioned, they were released. Shortly after, Butler PD officers stopped the same Honda Civic[1] outside the Butler Police Department. The driver and sole occupant was identified was co-defendant **Abu**. **Abu** was arrested after officers recovered marijuana from inside the car. Officers also recovered 19 personal checks made out to various people. **Abu's** cell phone was also recovered.

Surveillance video from outside the Butler Post Office showed two subjects matching the description of Abdi and Allison tampering with the blue mail collection box outside of the post office. The next day, USPS informed officers that the amount of mail in the blue mailbox was lighter than normal for a Monday morning.

### Travel to Green Bay banks

On April 3, 2023, GPS data shows the Honda Civic leaving 2965 North 5th St. (Abdi**'s** residence) at 9:16am and then travels to 2546 North 37th St (**Abu**'s residence) at 9:45am. The vehicle then travels to 5355 N 83rd St (Allison's residence) at 10:08am. The vehicle then drives to Green Bay, Wisconsin, and arrives at 12:18pm. Investigation and video surveillance revealed that Abdi, **Abu**, and Allison all performed transactions at the US Bank located at 1950 S Webster Avenue, in Green Bay and then drove next door to the Wells Fargo Bank located at 1900 S Webster Avenue and performed additional transactions. The vehicle then drove back to Milwaukee.

### Post-arrest statements of Allison and Abu

Both Allison and **Abu** gave post-arrest statements to officers after waiving their rights. Allison admitted to participating in the March 13 robbery. He said that the robbery occurred because a few nights prior, Abdi was using a different arrow key to try to steal mail, and that key broke off in the mail collection box. Allison said that **Abu** was extremely upset about this and ordered Abdi to get another key. Allison stated that **Abu** is known as "the Don" and is the leader of the group. Allison said that on March 13, he met up with Abdi, **Abu**, and two others. Allison said he was driving the Honda and Abdi was in the back seat while **Abu** followed them in a Malibu. He said they drove around and eventually found a mail carrier, circled back around, and then he

---

[1] It is the same car, but different plates. The plates on this day listed to Abdi. Agents believe that on March 24, 2023, the Civic was registered to the new registrant and the plates were changed.

3

(Allison) and Abdi went and robbed the mailman at gunpoint. Allison said that Abdi had a Draco pistol rifle. Allison said that Abdi found the arrow key in the mailman's bag and pulled it out. Allison said that during the robbery, Abdi racked the Draco and Allison was scared that he was going to shoot the mail carrier. Allison admitted he was also armed with a gun during the robbery. Allison said they ran back to the car after robbing the mailman, and that **Abu** got into the Honda Civic and Abdi handed the stolen key over to **Abu**. Allison said that Abdi and **Abu** were laughing about the robbery. Allison said that he did the robbery under **Abu**'s direction.

In his post-arrest statement, **Abu** made several admissions. He admitted to being present for the March 13, 2023 armed robbery and admitted knowing it would be a robbery for an arrow key. **Abu** also admitted to being the driver and lookout during the December 7, 2022 armed robbery. He further admitted being present for the February 10, 2023 armed robbery and acknowledged that an arrow key was taken. He stated several times during the interview that he did not directly commit the robberies but that he was "party to a crime" (**Abu's** words).

### Phone Records

Investigating agents reviewed **Abu's** cell phone contents. That phone contained numerous photographs consistent with **Abu's** involvement in the above-described robberies, including photographs of **Abu** with firearms, photos of ammunition, and photographs of checks which appear to have been stolen from USPS mail boxes.

### CD-1 Debrief

CD-1, a cooperating defendant, debriefed with law enforcement regarding his involvement in the postal robberies. CD-1 further stated that **Abu** originally had the idea to steal arrow keys with the ultimate goal of stealing checks from postal boxes. He stated that **Abu** was the primary user of a "Telegram" social media account which was used to discuss and share details regarding similar robbery schemes with other users from around the country.

As to the October 2022 robbery, CD-1 stated that he, co-defendant Cook, **Abu**, and co-defendant Abdi were the ones involved. CD-1 said that **Abu** was armed with the black Glock and that **Abu** put the gun to the victim's back. He said that Cook fought the mailman, and that Cook is the one who took the mailman's keys. CD-1 said the four of them all surveilled the mailman immediately before the robbery and they all discussed the plan to rob him. CD-1 said the four of them all fled on foot together. CD-1 said there was no car used during this robbery, and that the four of them came from and went back to the house on Buffum. CD-1 confirmed that this robbery was "planned" and that all four of them were responsible for it.

4